IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WELLS FARGO EQUIPMENT FINANCE, INC. )
                                        )
       Plaintiff,                     )
                                          )   No. 10 CV 4804
     v.                              )
                                          )   Hon. Charles R. Norgle
TITAN LEASING, INC., TITAN RAIL, INC. and )
TITAN TRANSIT, INC.                        )
                                          )
       Defendants.                   )

## OPINION AND ORDER

Plaintiff Wells Fargo Equipment Finance, Inc. ("Wells Fargo") sues Defendants

Titan Leasing, Inc. ("Titan Leasing"), Titan Rail, Inc. ("Titan Rail"), and Titan Transit,

Inc. ("Titan Transit") (collectively, "Defendants") for breach of contract. Before the

Court are Wells Fargo and Defendants' cross-motions for summary judgment. For the

following reasons, summary judgment is granted in favor of Defendants.

## I.    BACKGROUND[1]

Defendants lease locomotive trains to third parties. On April 7, 2008, Titan Rail,

as lessor, entered into a lease agreement (the "Gerdau lease") with Gerdau Ameristeel US

Inc. ("Gerdau" or "lessee") to lease locomotives for Gerdau's steel mills in Knoxville,

Tennessee and other locations. Titan Rail and Gerdau also entered into a Locomotive

Maintenance Agreement contemporaneously with the lease agreement, under which Titan

Rail agreed to provide certain maintenance and repairs to the locomotives. Subsequent to

the execution of the Gerdau lease, a specific locomotive ("Knoxville locomotive") for the

Knoxville location was identified and made a part of the lease agreement. Sometime

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes
disputed facts within the text.

between June and August of 2008, Defendants shipped the Knoxville locomotive from its originating location in Rochelle, Illinois to Gerdau, the lessee in Knoxville, Tennessee. Gerdau did not inspect the Knoxville locomotive prior to shipment.

While in transit, the Knoxville locomotive was dragged with the brakes turned on, destroying the wheels. The wheels were subsequently replaced and the locomotive left Mendota, Illinois on December 23, 2008. On February 5, 2009, the locomotive arrived at Knoxville Locomotive Works, where certain modifications and repairs required by Gerdau were made. However, the parties dispute whether all required repairs and modifications were ever completed before the locomotive ultimately arrived at Gerdau's Knoxville location. Although the modifications at Knoxville Locomotive Works were to be completed within six to eight weeks, the parties agree that, for purposes of the instant motions, the locomotive did not arrive at Gerdau's Knoxville location until the end of June or the beginning of July of 2009. While non-party Gerdau maintained that the modifications remained unfinished, Defendants considered the repairs complete.

It is undisputed that Gerdau never used the locomotive and never made any payments under the lease. Defendants admit that Titan Rail received a letter from Gerdau on October 22, 2009, wherein Gerdau alleged that Titan Rail failed to deliver the locomotive, thereby committing an anticipatory breach of the lease agreement. According to Gerdau, this resulted in termination of the lease with respect to the Knoxville locomotive.

Meanwhile, on March 6, 2009, Titan Rail assigned all rights, title, and interest in the Gerdau lease and Knoxville locomotive to Titan Leasing. The same day, Titan Leasing entered into a Nonrecourse Note ("note") with Wells Fargo. Titan Leasing and

Wells Fargo also entered into a Security Agreement on the note, granting Wells Fargo a security interest in the Gerdau lease and the Knoxville Locomotive. Pursuant to paragraph 3 of the Security Agreement, Titan Leasing, as lessor, made several representations, warranties, and covenants to Wells Fargo, including:

> (h) No Lease Default. As of the date a Lease is assigned to Lender hereunder [March 6, 2009], (1) no payment due under the Lease was more than 10 days past due, (2) no nonpayment default was in existence thereunder, and (3) Lessor has no knowledge that the Lessee is asserting or has any basis to assert any defense, setoff, or counterclaim to its obligations under the Lease. Lessor has not granted any extensions or waivers under any Lease during the period since such Lease began.

> (m) Equipment Delivery. As of the date a Lease is assigned to Lender hereunder [March 6, 2009], the related Equipment has been delivered and accepted by the Lessee and the Lessee has acknowledged receipt and acceptance of such Equipment. Upon request by Lender, Lessor will cause such Equipment to be stamped or otherwise labeled reflecting that Lessor is the owner of such Equipment.

Compl. Ex. 5 ¶ 3(h), (m). In addition, Titan Rail and Titan Transit each entered into separate guaranty contracts with Wells Fargo, guaranteeing all of Titan Leasing's obligations under the note and the Security Agreement. On March 6, 2009, in accordance with the note and Security Agreement, Titan Leasing assigned all of its rights, title, and interest in the Gerdau lease and the Knoxville locomotive to Wells Fargo.

Sometime after March 6, 2009, Wells Fargo discovered that Gerdau was contesting delivery and acceptance of the Knoxville locomotive, and that, while Titan Rail made some lease payments to Wells Fargo on Gerdau's behalf, Gerdau had not made any payments under the lease. As a result, Wells Fargo alleges that Titan Leasing breached its warranties under the Security Agreement for "No Lease Default" and "Equipment Delivery."

In accordance with the Security Agreement, if Titan Leasing breached a warranty, Wells Fargo could demand prepayments on the note. Wells Fargo demanded prepayments from Titan Leasing pursuant to the Security Agreement, and Titan Rail and Titan Transit pursuant to their respective guaranty contracts. Defendants denied breaching any warranties and refused to make prepayments. Under the Security Agreement, failure to make required prepayments is an "Event of Default." Id. at Ex. 5 ¶ 7. Defendants agree that, if an "Event of Default" occurs, "Wells Fargo is entitled to payment of the entire balance due under the Note, as well as prejudgment interest at a rate of 12% per annum, plus attorney's fees and costs." Wells Fargo's Statement of Undisputed Material Facts ¶ 39. While the note is otherwise nonrecourse, it states that "[t]he Lessor [Titan Leasing] is personally liable to repay this Note in the event of breach of warranty or agreement as provided in paragraph 6 of the Security Agreement." Compl. Ex. 4. It is undisputed that Wells Fargo has performed all of its obligations under the various contracts with Defendants. In July of 2010, Wells Fargo took possession of the Knoxville locomotive and has attempted to sell it, to no avail.

On July 30, 2010, Wells Fargo filed its complaint against Defendants, alleging breach of the note and the Security Agreement against Titan Leasing, breach of guaranty against Titan Rail, and breach of guaranty against Titan Transit. The instant cross-motions for summary judgment are fully briefed and before the Court.

## II.    DISCUSSION

### A. Standard of Decision

"Summary Judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." <u>Northfield Ins. Co. v. City of Waukegan</u>, Nos. 11-1215, 11-3729, 2012 WL 5870704, at *2 (7th Cir. Nov. 21, 2012) (quoting Fed. R. Civ. P. 56(a)); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. <u>Benuzzi v. Bd. of Educ. of City of Chi.</u>, 647 F.3d 652, 656 (7th Cir. 2011) (citing <u>Groesch v. City of Springfield, Ill.</u>, 635 F.3d 1020, 1022 (7th Cir. 2011)). But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." <u>Montgomery v. Am. Airlines, Inc.</u>, 626 F.3d 382, 389 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." <u>Gonzalez v. City of Elgin</u>, 578 F.3d 526, 529 (7th Cir. 2009) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)). "[F]actual disputes must be both material and genuine. . . . And a factual dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Carroll v. Lynch</u>, 698 F.3d 561, 564 (7th Cir. 2012) (internal quotation marks and citations omitted).

"Cross-motions [for summary judgment] must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." <u>Bloodworth v. Vill. Of Greendale</u>, 475 F. App'x 92, 95 (7th Cir. 2012). "To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to 'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial,' summary

judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322) (alterations in original).

## B. Cross-Motions for Summary Judgment

Wells Fargo alleges that, at the time the Security Agreement was executed on March 6, 2009, Titan Leasing—and through guaranty contracts, Titan Rail and Titan Transit—represented that the Knoxville locomotive had been delivered to and accepted by Gerdau, the lessee, and that the lessee was current on all payments under the lease, when in fact neither was true. Defendants deny that they breached either warranty, and in doing so, Defendants rely on the express language and terms of the underlying Gerdau lease agreement.

### 1. Choice of Law

Wells Fargo argues that Minnesota law controls the breach of contract claims as a result of a contractual choice of law provision.[2] "When a federal court hears a case in diversity . . . it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." Auto-Owners Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543, 547 (7th Cir. 2009). "Illinois courts respect a contractual choice-of-law clause if the contract is valid, and the law chosen is not contrary to Illinois's fundamental public policy." Thomas v. Guardsmark, Inc., 381 F.3d 701, 706 (7th Cir. 2004). It is undisputed that the note, Security Agreement, and both guaranty contracts are valid. The Security Agreement entered into between Wells Fargo and Titan Leasing contains a Minnesota choice of law provision, and the note and guaranty contracts are subject to the terms of the Security Agreement. See Compl. Ex. 5 ¶ 13(e) ("This Agreement shall be

---

[2] Defendants do not raise a conflicts of law issue with respect to any of the contracts. Nor do Defendants object to Wells Fargo's representations with regard to the contractual choice of law provisions.

construed and enforced in accordance with, and the rights of the parties shall be governed by, the substantive laws of the State of Minnesota without regard to conflicts of law rules."). Accordingly, the Court agrees that Minnesota substantive law controls the breach of contract claims against Defendants as to the note, Security Agreement, and guaranty contracts.

The underlying Gerdau lease agreement between Titan Rail and non-party Gerdau also contains a choice of law provision. The Gerdau lease provides that "[t]he validity, construction, and enforcement of this Lease shall be governed by the laws of the State of Illinois." Id. at Ex. 1 ¶ 22(c). Because it is undisputed that the Gerdau lease is a valid contract, the Court honors the choice-of-law provision. Guardsmark, Inc., 381 F.3d at 706. Indeed, while Wells Fargo does not explicitly raise a conflicts of law argument on this point, it cites to Illinois substantive law in evaluating the meaning of the terms of the Gerdau lease. See Wells Fargo Equipment, Inc.'s Reply Br. in Supp. of Its Mot. for Summ. J. 4-5, 8-9, 12-14. Therefore, to the extent that the parties rely on the underlying Gerdau lease and the lessee's compliance therewith to prove or rebut breach of warranties, the Court agrees that Illinois substantive law applies in construing the Gerdau lease.

### 2. Acceptance

Under Minnesota law, "[a] claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." Zinter v. Univ. of Minn., 799 N.W.2d 243, 245 (Minn. Ct. App. 2011) (internal quotation marks and citation omitted). Wells Fargo alleges that Defendants breached their respective contracts

by failing to make prepayments on the loan following an alleged breach of warranty. Wells Fargo alleges, *inter alia*, that the breach of warranty occurred when Titan Leasing represented that, as of March 6, 2009, the lessee had accepted the Knoxville locomotive. Wells Fargo contends that acceptance by the lessee never occurred, and alternatively, if the lessee did accept the locomotive, there was an effective revocation of acceptance.

Defendants admit that the locomotive did not arrive at Gerdau until late June or early July of 2009, approximately four months following the warranties made to Wells Fargo on March 6, 2009. Defendants deny, however, that Titan Leasing breached its warranty to Wells Fargo, when it represented that the lessee, Gerdau, had already accepted the locomotive. Defendants rely on the underlying lease agreement with Gerdau which states that "Shipment of Locomotive to Lessee shall constitute Lessee's formal acceptance of the Locomotive and Lessee's acknowledgment that the Locomotive meets the Delivery Specifications." Compl. Ex. 1, at 2. Accordingly, Defendants argue that the lessee's acceptance of the locomotive occurred between June and August of 2008, when it shipped from the originating location in Illinois, well before the March 6, 2009 warranties.

Wells Fargo alleges that the lessee never accepted the locomotive in accordance with the Uniform Commercial Code's ("UCC") definition of "Acceptance of Goods." Pursuant to that statute:

> (1) Acceptance of goods occurs after the lessee has had a reasonable opportunity to inspect the goods and
>
> (a) the lessee signifies or acts with respect to the goods in a manner that signifies to the lessor or the supplier that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity; or

(b) the lessee fails to make an effective rejection of the goods (Section 2A-509(2)).

(2) Acceptance of a part of any commercial unit is acceptance of that entire unit.

810 Ill. Comp. Stat. 5/2A-515 (2012); see also Micro Data Base Sys., Inc. v. Dharma Sys., Inc., 148 F.3d 649, 655 (7th Cir. 1998). Specifically, Wells Fargo alleges that the lessee never had a "reasonable opportunity" to inspect the goods; nor did the lessee act in such a way as to indicate that the goods were conforming, and therefore no acceptance occurred pursuant to the UCC before March 6, 2009.

Under Illinois law which controls the construction of the Gerdau lease, the "primary objective is to determine the parties' intent, but the best evidence of that intent is the contract itself." Westfield Ins. Co. v. FCL Builders, Inc., 948 N.E.2d 115, 120 (Ill. App. Ct. 2011). Illinois courts only consider "extrinsic evidence outside the contract if the contract is ambiguous." Id. Wells Fargo's rejection of the "legal effect" of the express terms of the lease does not constitute an effective denial of the same, and as such, the express terms of the Gerdau lease are undisputed. See Wells Fargo's Resp. to Defs.' Statement of Material Facts ¶¶ 17-19, 21 ("Admitted that the Lease contains the quoted provisions, but denied as to the legal effect of the provisions.").

Defendants, in relying on the express terms of the lease, allege that the lease agreement provided a reasonable opportunity to inspect the goods prior to shipment and acceptance. The express terms of the Gerdau lease state that "[p]rior to shipment, Lessee shall inspect the Locomotive to confirm it meets the Delivery Specifications," and "[f]ailure of Lessee to perform a final inspection of the Locomotive prior to shipment

shall not invalidate the stipulations set forth in this section and shipment of the Locomotive still shall constitute Lessee's formal acceptance." Compl. Ex. 1 ¶ 7(c), (d).

The terms of the Gerdau lease are unambiguous. Gerdau, the lessee, agreed to the lease terms on April 20, 2008, when the document was executed. The lease clearly sets forth a "reasonable opportunity" to inspect the locomotive prior to shipment and acceptance, and the consequences for failing to do so. See In re Rafter Seven Ranched LP, 362 B.R. 25, 30 (B.A.P. 10th Cir. 2007) ("[U]nder U.C.C. § 2-515, acceptance is conditioned only upon opportunity to inspect, not an opportunity to test."). Further, the lease provides that formal acceptance occurs at the time of shipment. Therefore, the lessee's actions in allowing the locomotive to ship, with or without an inspection, shows that it acted in such a way as to effectuate acceptance under the lease and in accordance with the UCC.

In the alternative, Wells Fargo argues that there was a valid revocation of acceptance between the lessee and Defendants pursuant to 810 Ill. Comp. Stat. 5/2A-517. Wells Fargo alleges that a series of emails from February of 2009 to September of 2009 demonstrates the lessee's dissatisfaction with the locomotive, culminating in a revocation of acceptance on October 22, 2009, when the lessee sent Defendants a letter attempting to terminate the lease. Even assuming the lessee's October 22, 2009 letter constituted a valid revocation of acceptance, it is irrelevant to the instant matter concerning an alleged breach of a warranty on or before March 6, 2009. Accordingly, the Court finds that the lessee accepted the locomotive and failed to reject it, if at all, before Titan Leasing made its representations to Wells Fargo in the March 6, 2009 warranty. Because, the warranty was not breached, Titan Leasing was not required to make prepayments, and Defendants

did not breach their respective contracts. Therefore, Defendants are entitled to judgment as a matter of law on this issue.

### 3. Payments

Wells Fargo also alleges that Titan Leasing breached its warranty that no lease payments were more than ten days past due and that the lessee was not in default as of March 6, 2009. It is undisputed that the lessee never made any lease payments. Wells Fargo argues that "Defendants expressly admit their liability to Wells Fargo for the misrepresentation that Gerdau was current on all Lease payments." Wells Fargo Equipment Finance, Inc.'s Reply Br. in Supp. of Its Mot. for Summ. J. 1. According to Wells Fargo, it is entitled to judgment as a matter of law because Defendants admit that the lessee did not make any payments under the lease. Not so. The issue is whether a lease payment was due, and not paid or in default, as of the March 6, 2009 warranty between Titan Leasing and Wells Fargo. Wells Fargo's own pleadings indicate that no payment was due as of March 6, 2009. Indeed, the contract for the assignment of the Gerdau lease payments from Titan Leasing to Wells Fargo specifically provides that the first payment was not due until April 15, 2009, over a month after Titan Leasing's warranty regarding "No Lease Default." Compl. Ex. 8, at Schedule A. Therefore, the Court finds that Titan Leasing did not breach the "No Lease Default" warranty. Because Titan Leasing did not breach this warranty, it did not commit a breach of contract of the nonrecourse note and Security Agreement when it failed to make prepayments to Wells Fargo. Nor did Titan Rail and Titan Transit breach their respective guaranty contracts by failing to make prepayments when the warranty was not breached. Accordingly, Defendants' are entitled to judgment as a matter of law on this issue as well.

### III.   CONCLUSION

There are no genuine issues of material fact regarding the warranties for acceptance and payment.  Because Titan Leasing did not breach either warranty, no prepayments were due.  Accordingly, Defendants are entitled to judgment as a matter of law.  For the foregoing reasons, Defendants' motion for summary judgment is granted, and Wells Fargo's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE:  December 7, 2012