CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 13-2291

WELLS FARGO EQUIPMENT FINANCE, INC.,

    *Plaintiff-Appellant*,

*v.*

TITAN LEASING, INC.; TITAN RAIL, INC.; and TITAN TRANSIT, INC.,

    *Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 4804 — **Charles R. Norgle**, *Judge*.

---

ARGUED SEPTEMBER 12, 2014 — DECIDED SEPTEMBER 30, 2014

---

Before EASTERBROOK, SYKES, and TINDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Gerdau Ameristeel leased a railroad locomotive from Titan Rail for use in switching at its mill in Knoxville, Tennessee. Titan Rail shipped the locomotive in summer 2008, but it was damaged in transit and sent to Knoxville Locomotive Works for repair. It did not reach

Gerdau's plant until summer 2009. Gerdau rejected it, stating that it needed further modifications and repairs.

In March 2009, while the locomotive was being repaired, Titan Rail assigned the lease to Titan Leasing, an affiliated business, which then used the lease as security for a loan from Wells Fargo Equipment Finance. The loan is nonrecourse, meaning that Wells Fargo agreed to look for repayment exclusively to the stream of rentals expected from Gerdau, but Titan Leasing made several warranties. Breach of a warranty entitles Wells Fargo to get its money back from Titan Leasing. Titan Rail and Titan Transit have guaranteed all of Titan Leasing's obligations to Wells Fargo.

The warranties that matter to this appeal are in ¶3(m) of the security agreement. Here is the language, with the numbers in brackets added for reference later:

> As of the date a Lease is assigned to Lender hereunder, the related Equipment has been [1] delivered and [2] accepted by the Lessee and the Lessee has acknowledged [3] receipt and [4] acceptance of such Equipment. Upon request by Lender, Lessor will cause such Equipment to be stamped or otherwise labeled reflecting that Lessor is the owner of such Equipment.

In this clause, "Lender" means Wells Fargo, "Lessor" means Titan Leasing, "Lessee" means Gerdau, and "the date" is March 6, 2009. On that date, the locomotive was in the hands of Knoxville Locomotive Works undergoing repairs.

Gerdau, which rejected the locomotive definitively in October 2009, has never made a payment on the lease. Wells Fargo has taken control of the locomotive and is attempting to sell it to recover some of what it loaned Titan Leasing—which has refused to return one penny. In this suit under the diversity jurisdiction, Wells Fargo contends that Titan Leas-

ing is liable for breach of the warranties in ¶3(m) of the security agreement. It is unclear whether Titan Leasing is in a position to repay; it has been dissolved by Illinois's Secretary of State. Titan Rail is not in good standing (which apparently means that it has stopped filing reports and paying taxes), and Titan Transit's right to do business in Illinois has been revoked. But Illinois allows litigation against a corporation within five years of its dissolution, 805 ILCS 5/12.80, and the doubtful collectability of a judgment does not affect federal subject-matter jurisdiction, see *Chafin v. Chafin*, 133 S. Ct. 1017, 1025 (2013), so we press on.

The district court granted summary judgment against Wells Fargo, 2012 U.S. Dist. LEXIS 175397 (N.D. Ill. Dec. 7, 2012), ruling that Titan Leasing had kept its promises. The district court applied Minnesota law to the interpretation of the security agreement and Illinois law to the lease, but there appears to be no difference between the two. The court looked to the lease, and then to the Uniform Commercial Code, to see whether the locomotive had been "accepted" (warranty 2) by March 6, 2009. The lease provides that "Shipment of Locomotive to Lessee shall constitute Lessee's formal acceptance of the Locomotive and Lessee's acknowledgment that the Locomotive meets the Delivery Specifications." Shipment occurred long before March 2009. Moreover, UCC §2A-515(1), 810 ILCS 5/2A-515(1), says that acceptance occurs "after the lessee has had a reasonable opportunity to inspect the goods" and "the lessee fails to make an effective rejection". Gerdau had an opportunity to inspect at the time of shipment, the court concluded—indeed, ¶7(c) of the lease *required* Gerdau to inspect before shipment, and although it is undisputed that Gerdau did not comply with

this obligation, its failure to inspect did not prevent the locomotive's "acceptance" under both the lease and the UCC.

Wells Fargo protests with some force that the district court should have addressed what "accept" means in the security agreement, not what it means in the lease or the UCC, neither of which was incorporated into the security agreement. But there is a more basic problem in the district court's decision: it stopped after addressing warranty 2. What about warranty 1 (that the locomotive had been "delivered" to Gerdau before March 6, 2009), warranty 3 (that Gerdau had acknowledged receipt), and warranty 4 (that Gerdau had acknowledged acceptance)? Titan Leasing treats "acceptance" as identical to "delivery," but neither the security agreement nor the lease creates this equivalence, and the UCC does not supply an off-the-rack meaning for "delivery" in commercial leasing.

Suppose, however, that "delivery" and "acceptance" are the same, so that the locomotive was both delivered and accepted when shipped. Warranty 3 provides that Gerdau has acknowledged the locomotive's receipt, and warranty 4 that it has acknowledged the locomotive's acceptance. Neither the lease nor the UCC equates "delivery" with "receipt," and these sound like different words—the locomotive may have been "delivered" and "accepted" when shipped, so that Gerdau bore the risk of loss in transit, but was not "received" until it reached Gerdau's plant. And until Gerdau *acknowledged* receipt, warranty 3 had not been fulfilled. No evidence in the record suggests that Gerdau ever acknowledged receipt of the locomotive. Titan Leasing observes that ¶7(b) of the lease says that shipment constitutes "Lessee's acknowledgment that the Locomotive meets the Delivery

Specifications … and that the Locomotive is suitable for Lessee's purpose ('Final Acceptance')", but this sounds different (if subtly) from the security agreement, which seems to contemplate a joint acknowledgment of receipt and acceptance.

This is not an exercise in semantic hair-splitting. Paragraph 3(m) of the security agreement, in connection with ¶3(h), which contains additional warranties, is designed to ensure that the lessee is satisfied with the locomotive. A satisfied lessee is more likely to pay. Delivery and acceptance are important steps toward having a satisfied lessee, but receipt followed by acceptance is more important. By acknowledging receipt and acceptance, the locomotive's lessee verifies that the goods conform to the contract after all risks of transit are over. That enables the lender to advance money with a good prospect of repayment. Yet after the locomotive arrived (that is, when receipt occurred, months after Titan Leasing warranted that this had already happened), Gerdau rejected it. That's a lender's nightmare.

Let us suppose that ¶7(b) of the lease shows that Gerdau did acknowledge acceptance, that delivery and acceptance mean the same thing in the lease, and that the security agreement tracks the lease in both respects. Still, warranty 3 is unsatisfied; Gerdau did not acknowledge the locomotive's receipt. This means that Titan Leasing did not live up to its warranties. It must repay Wells Fargo. Titan Rail and Titan Transit must perform their guarantees, if called on to do so. The judgment of the district court is reversed, and the case is remanded for the entry of judgment in Wells Fargo's favor.